IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **CAROLYN RUTH ZIMMERMAN**, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:11-CV-01990-L** |
| | § | |
| **GRUMA CORPORATION**, | § | |
| d/b/a Mission Foods, | § | |
| | § | |
| Defendant. | § | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Before the court is Defendant's Motion for Summary Judgment, filed October 1, 2012;

Plaintiff's Response to Defendant's Motion for Summary Judgment, filed October 22, 2012;

Defendant's Reply in Support of Motion for Summary Judgment, filed November 5, 2012;

Defendant's Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence, filed

November 5, 2012; Plaintiff's Response to Defendant's Motion to Strike, filed November 26, 2012;

and Defendant's Reply in Support of its Objections to and Motion to Strike Plaintiff's Summary

Judgment Evidence, filed December 10, 2012. After careful consideration of the motions, responses,

replies, record, and applicable law, the court **grants** Defendant's Motion for Summary Judgment and

**sustains in part** and **overrules in part** Defendant's Objections to and Motion to Strike Plaintiff's

Summary Judgment Evidence.

**I.     Procedural and Factual Background**

Plaintiff Carolyn Ruth Zimmerman ("Zimmerman" or "Plaintiff") brought this action against

Defendant Gruma Corporation, doing business as Mission Foods ("Gruma" or "Defendant") on

August 10, 2011, asserting claims of disability discrimination and retaliation against Gruma in violation of the Americans with Disabilities Act ("ADA"), and age discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA").  Pl.'s Am. Compl. 4-5.  Plaintiff seeks compensatory and liquidated damages, lost wages and benefits, reinstatement, prejudgment interest, costs of court, and attorney's fees.  *Id.* at 6.

On October 1, 2012, Defendant moved for summary judgment.  Plaintiff filed a response to Defendant's motion for summary judgment on October 22, 2012.  In her response, Plaintiff also raised objections to Defendant's summary judgment evidence.  Specifically, Plaintiff objects to paragraphs 7, 8, and 11 of Patty Garza's declaration, and to paragraphs 7, 8, 9, and 10 of Irma Monsivais's declaration.  On November 5, 2012, Defendant filed a reply in support of its motion for summary judgment and a motion to strike Plaintiff's summary judgment evidence.  Specifically, Defendant requests that the court strike portions of paragraphs 14, 18, 19, 20, 26, and 27 of Plaintiff's declaration and 58 pages of personnel records included in her appendix.  On November 26, 2012, Plaintiff filed a response to Defendant's Objections and Motion to Strike, asserting that Defendant's objections are without merit and that Defendant's motion should be denied.

The court now sets forth the facts in accordance with the standard set forth in section II(A) of this opinion.  Zimmerman began employment with Gruma in June 1994 as a Route Accounting Clerk.  Pl.'s App. 1, ¶ 2.  After successfully completing her probationary period, she was hired as a permanent employee by Gruma in September 1994.  *Id.*  At the time Zimmerman was hired, she

was over 40 years old.  *See* Def.'s App. 3.  In 1997, Plaintiff was diagnosed with polycythemia vera.[1]

After being diagnosed with the disease, she began receiving medical treatments called phlebotomies

(removal of blood) every three months and blood work two to three times a week to manage it.[2]  Pl.'s

App. 2, ¶ 3.  Plaintiff states that as her blood thickness decreased, her need for blood work decreased

from two to three times a week, to once a week.  *Id.*  In 1998, Zimmerman was also diagnosed with

diabetes.  She managed her diabetes by taking insulin, exercising and monitoring her food intake.

*Id.* at 2, ¶ 4.

In 2001, Zimmerman applied for intermittent leave under the Family and Medical Leave Act

("FMLA") to receive treatment and manage her polycythemia vera and diabetes.  *Id.* at 2, ¶ 5.  When

Plaintiff was denied FMLA leave, she approached the Human Resources ("HR") manager, Rosa

Flores ("Flores"), and told her that she was being wrongfully denied FMLA leave.  *Id.*  Two weeks

later, she was informed that she did not qualify when she first requested leave but was now eligible

for FMLA leave.  *Id.* at 2, ¶ 6.  Subsequently, Zimmerman began taking intermittent leave to undergo

phlebotomies and blood work.  *Id.* at 3, ¶ 7.  At the time, Gruma had an attendance policy based on

a point system.  *Id.*  Each absence would accrue one point, and if an employee accumulated a certain

number of points, she could receive a negative performance review, become ineligible for a raise,

or be subject to discipline up to termination.  *Id.*  It was brought to Plaintiff's attention that she was

receiving attendance points for her FMLA absences.  *Id.*  She approached the HR manager about it,

and the manager told her that Gruma's attendance policy did not make exceptions for health-related

---

[1] According to Plaintiff, polycythemia vera is a bone marrow disease that leads to an abnormal increase in the number of blood cells, primarily red blood cells.  *See also* The American Heritage Stedman's Medical Dictionary 655, 278 (1995).

[2] Plaintiff states that a phlebotomy is used to decrease blood thickness.  One unit of blood—about one pint—is removed weekly until the hematocrit level is less than 42 in females.

absences.  *Id.*  Zimmerman states that her supervisor at the time, Lynn Webb ("Webb"), began "questioning [her] about [her] repeated absences and making comments to her about how every time [she] missed work [she] was a burden on [her] coworkers."  *Id.* at 4, ¶ 8.  Furthermore, because of Plaintiff's FMLA-related absences, she did not receive her yearly bonus.  *Id.*  Plaintiff states that she raised the issue of her performance rating with Webb.  Ultimately, Gruma awarded Plaintiff her bonus.  *Id.*

Plaintiff states that she experienced "ongoing harassment" regarding her FMLA absences. *Id.* at 4, ¶ 9.  According to Zimmerman, she was told if she did not have a doctor's note, her absence would not be considered an approved-FMLA absence.  *Id.*  Zimmerman explained that she did  not always see a doctor when she was out with a FMLA absence, as the majority of the time she was going to a laboratory to have her blood work done or to get phlebotomies.  *Id.* at 4, ¶ 10. Zimmerman states that her claim was dismissed and was told to provide a doctor's note or she would receive an attendance point.  *Id.*  After Zimmerman approached management again, the company informed her that she was not required to have doctor's note every time she took a FMLA absence, and that she only needed to provide a doctor's certification quarterly to qualify under the FMLA. *Id.* at 4-5, ¶ 10.  Plaintiff states that she always provided HR with the requested certification.  *Id.* at 5, ¶ 11.  At some point in time, Zimmerman states she was  used "as an example of what not to do with regard to the attendance policy on the blackboard in front of the entire route accounting department" during a safety meeting.  *Id.* at 5, ¶ 12.  Zimmerman was also told by Flores, Webb, and another HR representative that she was expected to work a full eight-hour day and would have to make up the missed time.  *Id.*

On September 12, 2007, Zimmerman was approached by an HR representative, Jane Lucken ("Lucken"), regarding an e-mail she sent from her work e-mail address to over 40 Gruma employees on September 11, 2007. *Id.* at 5, ¶ 13; Def.'s App. 18. The letter contained content regarding her political and religious views. Pl.'s App. 6, ¶ 14. Lucken told Zimmerman "not to use the company email to send out personal messages." *Id.* at 5, ¶ 13. Lucken also told Zimmerman that "it was not a write-up or anything [she] should be worried about." *Id.*

In September 2009, Zimmerman wrote and distributed a 15-page letter for her coworkers and family members. Def.'s App. 26-28, 64-79. The letter detailed her beliefs on subjects including politics, religion, and sexual orientation. *Id.* Zimmerman received a final warning from HR Manager Patty Garza ("Garza") and her second-level supervisor, Route Accounting Manager Irma Santana ("Santana"), for violating the company's harassment policy by disseminating a letter regarding her political and religious beliefs to coworkers. Pl.'s App. 6, ¶ 15.

In the spring of 2010, Zimmerman complained to Santana that her direct supervisor, Beverly Crisp ("Crisp") was abrasive and overly critical of her performance. *Id.* at 7, ¶ 20. Sometime in late April or early May 2010, Zimmerman, Santana and Crisp had a meeting to develop a plan for how invoices and communications would be handled to avoid conflict and miscommunication in the future. *Id.* at 8, ¶ 21. Following Zimmerman's complaints and the meeting, Santana told her to document and report any instances of belligerent behavior by Crisp to Santana immediately. *Id.* On May 12, 2010, in response to an e-mail sent by Zimmerman, Crisp informed Zimmerman that she did not receive a certain attachment. Def.'s App. 37; Pl.'s App. 8, ¶ 22. Zimmerman began looking through her e-mails for the attachment when Crisp told her she already had the attachment. *Id.* Zimmerman went back to work; however, Crisp approached her and told her that she needed to

respond to her e-mail in writing.  Zimmerman responded to the e-mail by stating, "[y]ou had the invoice."  Def.'s App. 37.  Plaintiff then observed Crisp print out the e-mail and staple it to some other papers.  *Id.*  Zimmerman interpreted this as Crisp documenting an "incident" of Zimmerman "not performing her work."  *Id.*  Zimmerman immediately proceeded to Santana's desk to inform her of the incident.  Pl.'s App. 9, ¶ 23.  After relaying the incident to Santana, Santana "rolled her eyes and told [her] to deal with it and dismissed [her] complaint."  *Id.* At this point, Zimmerman "th[e]n whispered to Santana that [she] could not deal with this bullshit pressure."  *Id.*

Zimmerman was suspended for three days from work without pay for using an objectionable word.  *Id.* at 9, ¶ 24.  When she returned to work on May 17, 2010, she was informed that Gruma was terminating her employment for using an objectionable word in the workplace and because she had already received a final warning in 2009.  *Id.* at 9, ¶ 25.  At the time of her termination, Zimmerman was 60 years old.  *Id.* at 9, ¶ 26.

## II.     Relevant Legal Standards

### A.     Motion for Summary Judgment Standard

Summary judgment shall be granted when the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all facts and inferences in the light most favorable to the nonmoving party and resolve all disputed facts in favor of the nonmoving party.  *Boudreaux v. Swift*

*Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005).  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine dispute of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  On the other hand, "if the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986) (emphasis in original).  "[When] the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Id.*  (citation omitted).  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).  Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence.  *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994).

The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim.  *Ragas*, 136 F.3d at 458.  Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832

(1992).  "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment."  *Anderson*, 477 U.S. at 248.  Disputed fact issues that are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion.  *Id*.  If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted.  *Celotex*, 477 U.S. at 322-23.

**B.      Legal Standard Under the ADEA**

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Unlike Title VII, the ADEA does not authorize an alleged mixed-motives age discrimination claim.  *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009).  Instead, a plaintiff bringing a disparate-treatment claim under the ADEA must prove that age was the "but-for" cause of the challenged adverse employment action.  *Id.*; *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010).  It is therefore insufficient under the ADEA for a plaintiff to show that age was a motivating factor.  *See Gross*, 557 U.S. at 175.  "But-for" cause means the cause without which the challenged adverse employment action would not have occurred.  *See Long v. Eastfield Coll.*, 88 F.3d 300, 305 n.4 (5th Cir. 1996) (citations omitted).

A plaintiff may prove employment discrimination with either direct or circumstantial evidence.  *Jones v. Robinson Prop. Grp., L.P.*, 427 F.3d 987, 992 (5th Cir. 2005) (citing *Portis v. First Nat'l Bank of New Albany, Miss.*, 34 F.3d 325, 328 (5th Cir. 1994)).  Zimmerman does not base

her claims on direct evidence that Gruma discriminated against her; therefore, her case relies instead on circumstantial evidence.

The burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 802-04 (1973), applies to ADEA cases based on circumstantial evidence of discrimination. *Jackson v. Cal Western Packaging Corp.*, 602 F.3d 374, 378 (5th Cir. 2010). Both parties acknowledge that the *McDonnell Douglas* burden-shifting framework applies to Plaintiff's ADEA claim. For a *prima facie* case age discrimination claim which, a plaintiff must show that: "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by someone younger, or iii) otherwise discharged because of his age." *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011); *Berquist v. Washington Mut. Bank*, 500 F.3d 344, 349 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)); *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). In work-rule violation cases, a plaintiff "may establish a prima facie case by showing 'either that he did not violate the rule or that, if he did, [employees outside the protected class] who engaged in similar acts were not punished similarly.'" *Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). To state a *prima face* case in this manner, the employee "must show that [employees outside the protected class] were treated differently under circumstances 'nearly identical' to [theirs]." *Id.* (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)).

Once a plaintiff establishes a *prima facie* case, the defendant must set forth a legitimate, nondiscriminatory reason for the employment action it took against the plaintiff. *Machinchick*, 398

F.3d at 350.  This is a burden of production, not persuasion, on the defendant's part, and it "can involve no credibility assessment."  *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509 (1993).  "If the [defendant] articulates a legitimate, non-discriminatory reason for the employment decision, the plaintiff must then be afforded an opportunity to rebut the employer's purported explanation, to show that the reason given is merely pretextual."  *Moss*, 610 F.3d at 922.  "In determining whether the plaintiff's rebuttal precludes summary judgment, '[t]he question is whether [the plaintiff] has shown that there is a genuine issue of material fact as to whether this reason was pretextual.'"  *Id.* (citation omitted).  Pretext may be shown "either through evidence of disparate treatment or by showing that the employer's proffered explanation is false or unworthy of credence." *Jackson*, 602 F.3d at 378-79 (quoting *Laxton v. Gap Inc.*, 333 F.3d 572, 578 (5th Cir. 2003) (internal quotation marks omitted)).

### C.     Legal Standard Under the ADA

The ADA is an antidiscrimination statute designed to remove barriers that prevent qualified individuals with disabilities from enjoying employment opportunities available to persons without disabilities.  *Taylor v. Principal Financial Group, Inc.*, 93 F.3d 155, 161 (5th Cir. 1996).  The ADA prohibits discrimination against a qualified individual because of a disability "in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training; and other terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).

A person "may establish a claim of discrimination under the ADA either by presenting direct evidence or by using the indirect method of proof set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)."  *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).  To establish a *prima facie* case of intentional discrimination under *McDonnell Douglas*, a plaintiff must show that

she "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees." *Id.* The employer then "must show a legitimate, nondiscriminatory reason for its action." *Id.* "The employee ultimately bears the burden of showing that the employer's actions were motivated by considerations prohibited by the statute." *Id.*

A person is disabled under the ADA if she (1) has a physical or mental impairment that substantially limits one or more of the major life activities, (2) has a record of such impairment, or (3) is regarded as having such an impairment. 42 U.S.C. § 12102(2). The court must interpret this definition strictly. *Carmona v. Southwest Airlines Co.*, 604 F.3d 848, 855 (5th Cir. 2010).

### D.    Legal Standard for Retaliation

To establish a *prima facie* case of retaliation under the ADEA and the ADA, a plaintiff must show: (1) that she engaged in a protected activity under the ADEA or ADA; (2) that there was an adverse employment action; and (3) that a causal link existed between the protected activity and the adverse employment action. *See Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001) (citing *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 n.8 (5th Cir. 1998); *Seaman*, 179 F.3d at 301 (citing *Grizzle v. The Travelers Health Network*, 14 F.3d 261 (5th Cir. 1994)). The establishment of a *prima facie* case gives rise to an inference of retaliation. *See Montemayor v. City of San Antonio*, 276 F.3d 687, 692 (5th Cir. 2001). This inference, in turn, shifts the burden of proof to the defendant, who must then articulate a legitimate, nondiscriminatory or nonretaliatory reason for the challenged employment action. *See McCoy v. Shrevport*, 492 F.3d 551, 557 (5th Cir. 2007). Once a defendant asserts such a reason, the inference of retaliation raised by the *prima facie* showing drops from the case. *Montemayor*, 276 F.3d at 692. At this point, summary judgment is appropriate

unless the plaintiff can raise a genuine dispute of material fact as to whether the defendant's rationale is pretextual. *Septimus v. University of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005).

## III.    Evidentiary Objections

Both sides have lodged objections to the other's summary judgment evidence.  The court therefore finds it appropriate to first resolve these objections, as resolution of them will necessarily require the court to determine which evidence is admissible for purposes of the motion for summary judgment.

### A.    Plaintiff's Objections

Plaintiff raises several objections to the declarations of Garza and Santana submitted by Defendant as summary judgment evidence.[3]  Zimmerman makes the following objections to Garza's declaration:

- Zimmerman objects to paragraph 7, which states that "[a]t least one of those employees [to which she distributed the letter] complained about the letter," on the grounds that: (1) the alleged person who complained is not identified; (2) the best evidence would be from the person who allegedly complained about the letter; and (3) the statement is self-serving, hearsay, and assumes facts not in evidence.

- Zimmerman objects to  paragraph 8, which states that Zimmerman told Ms. Santana "something along the lines of 'This is bullshit.  I can't work under these conditions,'" on the basis that it is hearsay for which no exception applies.

- Zimmerman objects to paragraph 11, which contains various statements about complaints Garza received from other employees, because: (1) the alleged person who complained is not identified; (2) the best evidence would be from the person who allegedly complained about the letter; and (3) the statement is hearsay for which no exception applies.

---

[3] The declaration is titled "Declaration of Irma Monsivais (formerly Santana)."  Def.'s App. 91.  According to the declaration, Santana changed her last name to Monsivais in June 2012.  In this opinion, however, the court will continue to refer to Irma Monsivais as "Santana."

Plaintiff also makes the following objections to Santana's declaration:

- Zimmerman objects to paragraph 7, which states, "[i]n September 2009, a Route Accounting Supervisor advised me that Carolyn distributed an inappropriate letter to her and numerous other people at work and at least one recipient of the letter was offended by it." Plaintiff objects to this statement because: (1) the alleged person who complained is not identified; (2) the best evidence would be from the person who allegedly complained about the letter; (3) the statement is self-serving; and (4) it assumes facts not in evidence.

- Zimmerman objects to paragraph 8, which states, "I reported the letter to my supervisor Adalis Bonilla and Patty Garza in Human Resources and I determined Carolyn's distribution of the letter to co-workers on Company premises, given its offensive content, violated the Company's policy on harassment and, accordingly, issued her a Final Warning for violation of the Company's anti-harassment policy," because the statement is self-serving.

- Zimmerman objects to paragraph 9, which states, "We told Carolyn that we considered the letter to be a violation of the anti-harassment policy because the recipients could be offended by the content    and in fact at least on recipient was offended.  We made it clear to Carolyn that another inappropriate or harassing comment from her could lead to termination."  Zimmerman objects on the basis that: (1) the alleged person who complained is not identified; (2) the best evidence would be from the person who allegedly complained about the letter; (3) the statement is self-serving; (4) it assumes facts not into evidence; and (5) it is hearsay for which no exception applies.

- Zimmerman objects to paragraph 10, which states that "Beverly Crisp shared concerns with me about Carolyn's performance.  For instance, at times, Carolyn would input information incorrectly, which would impact the distributer's [sic] check.  Also, Beverly expressed concerns about Carolyn's communication style."  Zimmerman contends it is hearsay for which no exception applies.

In response to Plaintiff's objections to its summary judgment evidence, Defendant argues that the best evidence rule is not applicable to statements in summary judgment declarations.  Defendant cites to *Kiva Kitchen & Bath Inc. v. Capital Distrib. Inc.*, 319 F. App'x 316, 322 (5th Cir. 2009), which states that "[t]he best evidence rule comes into play only when the terms of a writing are being established,' not when a witness's testimony is based on personal knowledge."  Thus, Defendant

argues, the "best evidence" rule under Federal Rule of Evidence 1002, does not apply.  The court agrees.

Federal Rule of Evidence 1002 applies when a party wishes to prove the contents of "[a]n original writing, recording, or photograph," not when a "witness's testimony is based on first-hand knowledge of an event." *Id.* (quoting Weinstein's Federal Evidence § 1002.04).  Here, Garza's declaration suggests that she was speaking based on firsthand knowledge of the employee who complained about the letter, as opposed to speaking from knowledge gained from a writing depicting the event.  Although it is unclear whether Santana learned from the Route Accounting Supervisor that at least recipient of the letter was offended by it, the court nonetheless finds that the best evidence rule does not apply, as Santana is not trying to establish the terms of a writing, recording, or photograph depicting the event; nor is there a suggestion that she came to know about the offended employee from any writing, recording, or photograph depicting the event.  Therefore, the court will overrule Plaintiff's objections based on the "best evidence" rule.

Defendant further argues that Plaintiff's objections to Garza's and Santana's statements on the basis they are self-serving is baseless.  Defendant contend, and, the court agrees, that "self-serving" is not a valid objection.  "A party's own testimony is often 'self-serving,' but [the court] do[es] not exclude it as incompetent for that reason alone.  Instead, an affidavit based on personal knowledge and containing factual assertions suffices to create a fact issue, even if the affidavit is arguably self-serving." *C.R Pittman Const. Co., Inc. v. Nat'l Fire Ins. Co. of Hartford*, 453 F. App'x 439, 443 (5th Cir. 2011) (citations omitted); *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989) ("[C]haracterizing a party's testimony as "self serving" is not useful to the court. In a lawsuit, where each party is attempting to advance his own cause and protect his own interests, we

**Memorandum Opinion and Order - Page 14**

are scarcely shocked when a party produces evidence or gives testimony that is 'self-serving.'"). Thus, the court finds Plaintiff's objections on the basis that the statements are self-serving to be without merit.

With respect to Plaintiff's hearsay objections, Defendant counters that the statements regarding complaints from Zimmerman's coworkers and supervisor are not hearsay because they are not being offered to prove the truth of what they assert. According to Gruma, the statements are being offered to establish its state of mind in making various employment decisions with respect to Zimmerman. The court agrees. The statements are not being offered to prove that her letter was indeed offensive and constituted harassment, or that she was a poor employee; rather, they are being offered to show the reasons why Gruma took the actions that it did with respect to: (1) issuing Zimmerman a Final Warning for violation of its anti-harassment policy; (2) placing her on administrative leaving pending a decision regarding termination; and (3) terminating her employment. Whether the complaints about the letter and Zimmerman's work performance are true is irrelevant, because in a discrimination case, "the inquiry is limited to whether the employer believed the allegation in good faith and whether the decision to discharge the employee was based on that belief." *Waggonner v. City of Garland, Tex.*, 987 F.2d 1160, 1165-66 (5th Cir. 1993). The court therefore also finds Plaintiff's objections based on hearsay to be without merit.

Accordingly, the court **overrule**s Plaintiff's objections to Defendant's summary judgment evidence, and the evidence objected to by Plaintiff is admissible for purposes of the summary judgment motion.

**B.      Defendant's Objections and Motion to Strike**

Defendant moves to strike portions of: (1) Plaintiff's affidavit because it contains hearsay and conclusory statements not supported by specific facts; and (2) 58 pages of personnel documents in her appendix because they are unauthenticated and constitute hearsay not within any recognized exception.

1.      Objections to Zimmerman's Affidavit

a.      *Hearsay Objections*

Defendant makes the following objections to Zimmerman's affidavit on the basis that it is hearsay and does not fall within the admission by party-opponent or any other exception to the hearsay rule:

- Defendant objects to paragraph 14, which states that "many of my co-workers who joined in these lunch discussions approached me and asked me if they could have a copy of the letter."

- Defendant objects to paragraph 19, which states "Sandra Huerta and Darlena Rojas . . . told me that they had observed Crisp on multiple occasions belittling and trying to intimidate me."

- Defendant objects to paragraph 20, which states, "Also the Distributors complained to me that Crisp continually called distributors and asked them for documents and then told the distributors to send the documents to me . . . ."

- Defendant objects to paragraph 26, which states, "After my termination I was informed by a Gruma employee, Anne Day, that I was replaced by Ana Garcia[,] a Hispanic female in her twenties."

According to Gruma, these statements do not constitute a party-opponent admission because, for the rule to apply, Plaintiff must establish (1) Gruma authorized the employee to make a statement concerning the subject, and (2) this subject was a matter within the scope of the employee's employment, and Plaintiff has not indicated these individuals were authorized by Gruma to make

the alleged statement or that the statements were within the scope of her employment.   Therefore,

Defendant argues the statements do not meet the requirements of Rule 56 and should be struck from

the record.

Plaintiff responds that the statements in her affidavit are admissible under Federal Rules of

Evidence 401, 701, 801(d)(2), 803(1), 803(3), and 807.  According to Plaintiff, these statements are:

based on Zimmerman's experience and knowledge "as evidenced in the Declaration [sic];" are not

conclusions but statements of fact; and to the extent, if any, the statements contain an opinion, the

statements are admissible as opinion testimony by a lay witness.   Moreover, Plaintiff argues

Defendant's objection to the statement in paragraph 26 should be denied because Defendant stated

in its Answer and Objections to Plaintiff's First Set of Interrogatories that it hired Ana Garcia

("Garcia") and that Defendant never supplemented its Interrogatory answers to reveal Garcia's age.

The court disagrees.

The court first addresses Plaintiff's statement that Gruma hired Garcia.  Defendant objected

to Plaintiff's Interrogatory No. 21, which requested information regarding persons who had

performed Zimmerman's former job duties since she was terminated.[4]   Subject to and without

waiving its objection, Defendant admitted to hiring Garcia; however, it did not provide her age as

requested.  Defendant agreed to provide Garcia's age subject to a "mutually agreeable stipulation and

order of confidentiality," but nothing in the record indicates the parties ever executed such an

agreement.   Pl.'s App. 78.   Moreover, if Zimmerman believed the information provided to

Interrogatory No. 21 was insufficient or that the objections lodged by Gruma were not warranted,

---

[4] Specifically, Defendant objected to this Interrogatory on the basis that it was "vague, ambiguous, overly broad, and seeks information that is neither relevant to the claims or defenses of either party nor reasonably calculated to lead to the discovery of admissible evidence."  Pl.'s App. 78.

**Memorandum Opinion and Order - Page 17**

she should have filed a motion to compel answers to the requested discovery.  She did not do so.

Therefore, the court denies Plaintiff's request to deny Defendant's objection on the basis that

Defendant never supplemented its Interrogatory answers to reveal Garcia's age.   Insofar that

Defendant admitted Garcia replaced Plaintiff, the court accepts this as competent summary judgment

evidence; however, evidence as to Garcia's age is not competent summary judgment evidence.

The court determines that, with the exception of Defendant's admission that it hired Garcia,

Plaintiff's statements constitute hearsay because she has not established that the statements qualify

as party-opponent admissions, and her statements are being offered for the truth of the matter

asserted.   Specifically, Zimmerman has not shown that: (1) the statements were made in a

representative capacity; (2) Gruma adopted the statements; (3) Gruma authorized Zimmerman's

coworkers to make the statements; or (4) that the coworkers who allegedly made the statements

maintained an agency relationship and that the statements were within the scope of that relationship

while it existed.   *See* Fed. R. Evid. 801(d)(2)(A)-(D); *see also Thomas v. Atmos Energy Corp.*, 22

F. App'x 369, 374 (5th Cir. 2007).

Moreover, these statements also do not fall within the exceptions to the hearsay rule argued

by Plaintiff.  First, these statements do not qualify as present sense impressions under Rule 803(1)

because Plaintiff has not established that the statements describe "an event or condition, made while

or immediately after the declarant perceived it."  *See United States v. Polidore*, 690 F.3d 705, 720

(5th Cir. 2012) ("The basis for [the present sense impression] hearsay exception relies on the

*contemporaneousness* of the event under consideration and the statement describing that event.")

(emphasis added) (citations and internal quotation marks omitted).  Second, Zimmerman has not

established that her statement in paragraph 19 is entirely admissible under Rule 803(3)'s state of

mind exception. "Rule 803(3) permits admission of statements where, among other things, the statements occurred contemporaneous with events sought to be proved . . ." and "provides that the exception therein does not apply to a 'statement of memory or belief to prove the fact remembered or believed.'" *United States v. Reyes*, 239 F.3d 722, 743 (5th Cir. 2001) (citations omitted); *Prather v. Prather*, 650 F.2d 88, 90 (5th Cir. Unit A July 1981) (quoting Fed. R. Evid. 803(3)). "However, it is clear that before a statement, otherwise hearsay, can be admitted under 803(3) to show the declarant's then existing state of mind, the declarant's state of mind must be a relevant issue in the case." *Prather*, 650 F.2d at 90. Here, Zimmerman's statement does not evidence Huerta and Rojas's state of mind at the time they made the statements to her; rather, their statements to Zimmerman were recitations of their memories of what they saw and thought on prior occasions, to which the exception does not apply. More importantly, Huerta and Rojas's state of mind is irrelevant to the issue of whether Gruma discriminated against Plaintiff on the basis of disability or age.

Plaintiff's characterization of her statements as opinion testimony by a lay witness also fails.

If the witness is only testifying as a lay witness, the witness's testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

*United States v. Cooks*, 589 F.3d 173, 179-80 (5th Cir. 2009) (citing Fed. R. Evid. 701). If, however, "attempts are made to introduce meaningless assertions which amount to little more than choosing up sides, exclusion for lack of helpfulness is called for by the rule." Fed. R. 701 advisory committee's note. The court finds that Plaintiff's statements are not being offered as opinions or are helpful to clearly understanding the witness's testimony or to determining a fact at issue and should be excluded for lack of helpfulness. In any event, these statements constitute hearsay that do

not fall within an exception; thus, any argument by Plaintiff that these statements constitute opinions is inapposite.

Moreover, Plaintiff has failed to establish that her statement in paragraph 14 is admissible pursuant to Rule 807's "residual exception" to the hearsay rule. "The exception is to be used only rarely, in truly exception cases. The proponent of the statement bears a heavy burden to come forward with indicia of both trustworthiness and probative force." *United States v. Phillips*, 219 F.3d 404, 419 n.23 (5th Cir. 2000) (citations and internal quotation marks omitted). Zimmerman's bald assertion that Rule 807 applies, without anything more, is insufficient to establish that the statement falls with the residual exception to the hearsay rule. Accordingly, the court **sustains** Defendant's hearsay objections to Plaintiff's affidavit.

> b.    *Objections to Conclusory Statements Made without Personal Knowledge*

Defendant also makes the following objections to Zimmerman's affidavit on the basis that it consists of self-serving, conclusory statements unsupported by specific facts demonstrating she has personal knowledge:

- Defendant objects to paragraph 18, which states, "Crisp had previously been written up for the way she talked to Darlena Rojas, a route accounting clerk at Gruma."

- Defendant objects to paragraph 27, which states "cussing in the workplace was commonplace at Gruma and I had witnessed on numerous occasions Supervisors and numerous associates use curse words while on the job."

Plaintiff responds that these statements are admissible pursuant to Rules 401 and 701. The court disagrees. Plaintiff lists no specific facts to provide a basis for her testimony about Crisp's disciplinary history, such that she was present when the alleged write-up took place, or any evidence to demonstrate that she had personal knowledge of the write-up, and therefore fails to meet the

predicate requirements of Federal Rule of Evidence 602. Thus, the court will sustain Defendant's objection to paragraph 18.

The court, however, will overrule Defendant's objection to Plaintiff's statement regarding swearing being commonplace in the workplace. Plaintiff establishes in the affidavit that her opinion is based on having witnessed, on numerous occasions, other people using swear words while on the job. This statement can be said to result "from a process of reasoning familiar in everyday life" and does not rest on scientific, technical, or specialized knowledge. *Cooks*, 589 F.3d at 180. The court therefore **sustains** Defendant's objections to paragraphs 14, 18, 19, 20 and 26, and **overrules** Defendant's objection to paragraph 27.

2.      Objections to Personnel Records

Defendant objects to the personnel documents in Plaintiff's Appendix (Pl.'s App. 12-75) because they are unauthenticated and constitute hearsay not falling within any exception. According to Defendant, the records are not offered through Plaintiff's affidavit or any person through whom the exhibits could be admitted into evidence at trial. Further, Defendant states that the appendix pages include numerous absent reports and performance reviews with unidentified handwriting and multiple FMLA medical certifications signed by unidentified physicians and copies of e-mails and attachments for which she was neither the sender nor a recipient. Plaintiff, citing "Fed. R. Evidence 1004(3)," which the court construes as Federal Rule of Evidence 1004(c), counters that the documents were produced by Defendant and bear Defendant's bates numbers, and, therefore, Defendant cannot claim prejudice or surprise.

The court agrees with Defendant. "Unauthenticated documents are improper as summary judgment evidence." *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994) (citing *Duplantis v. Shell*

*Offshore, Inc.*, 948 F.2d 187, 192 (5th Cir. 1991)).  Federal Rule of Evidence 901 provides that, "[t]o satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a).  Here, the documents lack certification of a custodian or records or other qualified person, and, therefore, are not self-authenticating records.  *See* Fed. R. Evid. 902(11). Plaintiff could have satisfied the authentication requirement by attaching the records to a declaration or affidavit from the custodian of records for Gruma, or any other qualified witness with personal knowledge that the documents are company personnel records (business records), but she failed to do so.  Because the documents are unsworn and lack authentication as business records or other certified records, they do not qualify as a business record admissible under Rule 803(6).  *See* Fed. R. Evid. 803(6).  Therefore, the court **sustains** Defendant's objection to the personnel records in Plaintiff's Appendix.

Accordingly, the court **sustains in part** and **denies in part** Defendant's Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence.  With respect to the statements mentioned in paragraphs 14, 18, 19, 20, and 26 of Plaintiff's affidavit, and the personnel records in pages 12-75 of Plaintiff's Appendix, the court will exclude these statements and documents as competent summary judgment evidence.  With respect to Plaintiff's statement in paragraph 27, the court **overrules** Defendant's objection and will deny Defendant's request to strike it from the record.

## IV.   Analysis

Defendant moves for summary judgment on Plaintiff's claims for age discrimination and retaliation, and disability discrimination and retaliation.  Defendant asserts that Zimmerman's argument that she was terminated because she was older, had health issues and was on the "bad side"

of HR after requesting leave under the FMLA in 2001, and, thus, the company must have conspired for almost a decade to "get rid" of her, is nothing more than baseless speculation and conjecture. Gruma contends that Zimmerman was terminated following her admitted use of profanity in a "rant" to her second-level supervisor only months after being placed on a Final Warning for violating the company's anti-harassment policy.

### A.     Plaintiff's Allegations Before May 6, 2010

Defendant first contends that any of Plaintiff's claims based on acts occurring before May 6, 2010, are barred and fail as a matter of law.  According to Defendant, Zimmerman filed her Equal Employment Opportunity Commission ("EEOC") Charge on March 2, 2011, and identified the earliest date that the discrimination took place as May 12, 2010, the day of her suspension pending termination.  Because, in Texas, a complainant must file a charge of discrimination with the EEOC within 300 days after the alleged unlawful employment practice occurred, Defendant argues that any claim based on an act that occurred before May 6, 2010    the 300th day before March 2, 2011    is barred and only claims related to her termination are properly before the court.  The court agrees.  *See* 42 U.S.C. § 2000e-5(e)(1).  Therefore, the court does not address any of Zimmerman's allegations of "harassment" prior to May 6, 2010.

### B.     Age Discrimination

#### 1.     Plaintiff's *Prima Facie* Case

Defendant argues that Plaintiff cannot establish the fourth element of her *prima facie* case of age discrimination because she does not know who replaced her or have evidence to show she was replaced by someone younger.  Furthermore, even if Zimmerman could show she was replaced by someone younger, Gruma argues that she cannot meet her *prima facie* burden of establishing that

it treated similarly situated younger employees more favorably than it treated her.  Plaintiff responds that she has established a *prima facie* case for age discrimination.  The court disagrees.

Plaintiff has not brought forth evidence to demonstrate that she was replaced by someone younger.  Zimmerman attempted to introduce evidence of her alleged replacement through her affidavit; however, she did not have personal knowledge of her replacement's age and attempted to introduce it through a statement of another Gruma employee.  The court determined that this statement was hearsay for which no recognized exception applied.  As such, this statement is inadmissible as summary judgment evidence and cannot be relied on by Plaintiff to establish her *prima facie* case.

Moreover, in a case such as this, where the defendant demonstrates that the plaintiff was discharged for violation of a work rule, the plaintiff may establish a *prima facie* case by showing that either she did not violate the rule or that, if she did, employees outside the protected class who engaged in similar acts were not punished similarly.  *See Mayberry*, 55 F.3d at 1090.  Here, Plaintiff admits violating Gruma's work rules, but she suggests that the severity of the discipline was discriminatory by stating that "cussing in the workplace was common place at Gruma," and that she had "witnessed on numerous occasions Supervisors and numerous associates use curse words while on the job."  Pl.'s App. 10, ¶ 27.  Plaintiff, however, does not identify the employees to whom she refers, nor does she provide details as to the circumstances under which the unidentified employees swore, to demonstrate that they were treated differently under circumstances nearly identical to hers.  Because Zimmerman does not produce evidence to satisfy her burden of showing that the employer

treated her less favorably than similarly situated younger employees, the court determines Zimmerman has not established a *prima facie* case of discrimination under the ADEA.

2.   <u>Pretext</u>

Even assuming Plaintiff established a *prima facie* case of age discrimination to support an inference of disparate treatment, the court determines that Gruma has offered a legitimate, nondiscriminatory reason for its discharge decision.  Here, Gruma articulates that it "terminated Zimmerman for her use of disrespectful and profane language in violation of the Company's Rules of Conduct while on a Final Warning for another conduct violation for harassment."  Def.'s Mot. for Summ. J. 21.   "Violation of a work-rule is a legitimate, nondiscriminatory reason for termination."  *Rochon v. Exxon Corp.*, 203 F.3d 827, at *3 (5th Cir. 1999) (per curiam) (citation omitted).  Plaintiff argues that Gruma's reason for terminating her is pretext for discrimination; however,  Plaintiff does not dispute using the term "bullshit" when speaking to her second-level supervisor about her direct supervisor after being placed on a Final Warning for harassment.  Thus, based on the record, Plaintiff has not, and, frankly, cannot raise a genuine dispute of material fact that Gruma's legitimate nondiscriminatory reason for her termination is false or that age was the "but-for" cause of her termination.  Accordingly,  the court determines that Plaintiff has not raised a genuine dispute of material fact regarding pretext, and Defendant is entitled to judgment as a matter of law on her age discrimination claim.

**C.   Disability Discrimination**

Gruma also argues that Zimmerman's disability discrimination claim fails because, even assuming she can establish the other elements of her claim, she cannot establish the fourth element of her *prima facie* case or establish pretext.  Zimmerman responds that Gruma regarded her as a

qualified individual with a disability    specifically, diabetes and polycythemia vera    and that she

had a disability at the time of her termination.

The court determines that Plaintiff has not met her burden in establishing a *prima facie* case

for disability discrimination.  The only argument Zimmerman offers with respect to her disability

discrimination claim is that she is disabled within the meaning of the Americans with Disabilities

Act Amendments Act.  Plaintiff offers no evidence to establish that Gruma replaced her with a

nondisabled employee or otherwise treated nondisabled employees more favorably.  Being disabled

alone is not sufficient to establish a *prima facie* case for disability discrimination.  *See Seaman*, 179

F.3d at 300.  Instead, Plaintiff's disability claim appears to be based on events that occurred during

the years of 1999 to 2001, as she does not allege any further incidents regarding FMLA leave issues

during the years of 2001 to 2009.  Based on the paucity of evidence in the record, it goes far beyond

any reasonable and permissible inference that Defendant waited almost a decade to discriminate

against Plaintiff by terminating her on the basis of her disability.  This claim is based on sheer

conjecture and speculation.  Accordingly, the court determines that there is no genuine dispute of

material fact with respect to Plaintiff's disability claim, and Defendant is entitled to judgment as a

matter of law on this claim.

### D.    Retaliation

Defendant further argues that Plaintiff cannot establish a *prima facie* case of retaliation

claims under the ADEA or the ADA because she did not engage in lawfully protected conduct.

Zimmerman contends that her May 12, 2010 complaint to Santana about Crisp constitutes "an

internal complaint" regarding "a hostile work environment created by Crisp" and that on the same

day she was suspended for three days without pay and was ultimately terminated.  Pl.'s Resp. to

Def.'s Mot. for Summ. J. 31-32.  According to Zimmerman, her internal complaint was protected activity, and the temporal proximity between the protected activity and the adverse employment action demonstrates a causal link between the report of discrimination and the retaliatory termination, thus, establishing her *prima facie* case.  The court disagrees.

"Section 623(d) of the ADEA protects employees from retaliation for opposing acts of age discrimination, or for charging, testifying, assisting, or participating in any manner in an investigation, proceeding, or litigation under the ADEA." *Holt v. JTM Industries, Inc.*, 89 F.3d 1224, 1225 (5th Cir. 1996) (citing 29 U.S.C. § 623(d)).  The anti-retaliation provision of the ADA provides, in relevant part: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter."  42 U.S.C. § 12203(a).

The court agrees with Zimmerman that an employee's informal internal complaint of discrimination is protected activity under the ADEA and the ADA.  *See Amanduron v. America Airlines*, 416 F. App'x 421, 424 (5th Cir. 2011) ("'[A]n informal complaint may constitute protected activity for purposes of retaliation claims.'") (quoting *Casna v. City of Loves Park*, 574 F.3d 420, 427 (7th Cir. 2009)).  For internal complaints to constitute protected activity for the purposes of retaliation claims, however, the complaint must concern unlawful employment discrimination.  *See Davis v. Dallas Indep. Sch. Dist.*, 448 F. App'x 485, 493 (5th Cir. 2011) ("We have consistently held that a vague complaint, without any reference to an unlawful employment practice under Title VII, does not constitute protected activity.") (citing *Tratree v. BP N. Am. Pipelines, Inc.*, 277 F. App'x 390, 395 (5th Cir. 2008) ("Complaining about unfair treatment without specifying why the treatment

is unfair . . . is not protected activity."); *Harris Childs v. Medco Health Solutions, Inc.*, 169 F. App'x

913, 916 (5th Cir. 2006) (affirming summary judgment on retaliation claim when plaintiff never

"specifically complained of racial or sexual harassment, only harassment"); *Moore v. United Parcel*

*Serv., Inc.,* 150 F. App'x 315, 319 (5th Cir. 2005) ("Moore . . . was not engaged in a protected

activity, as his grievance did not oppose or protest racial discrimination or any other unlawful

employment practice under Title VII."); *Evans v. Tex. Dep't of Transp.*, 547 F. Supp. 2d 626, 654

(E.D. Tex. 2007) ("Plaintiff has not shown that she engaged in a statutorily protected activity.

Specifically, although Evans complained of a purportedly hostile work environment, at no time did

she suggest that [the conduct at issue] was related to Evan's race, sex, . . . or other characteristic

protected by Title VII.")).  Telling a supervisor "I cannot deal with this bullshit pressure" is not an

internal complaint regarding discrimination based on Zimmerman's age or disability that would

constitute protected activity under the ADEA or ADA.  *See id.*  "Magic words are not required, but

protected opposition must at least alert an employer to the employee's reasonable belief that

unlawful discrimination is at issue." *Brown v. United Parcel Serv., Inc.*, 406 F. App'x 837, 840 (5th

Cir. 2010).  Here, Zimmerman's statement could not, and did not, alert Santana to any belief by

Zimmerman that unlawful discrimination was at issue.  According to Santana's declaration, "Carolyn

never complained to me that she was being treated differently because of her age or medical

conditions."  Def.'s App. 93, ¶ 17.  Further, there is nothing in the record that the alleged hostile

environment was based on age or disability discrimination, the two statutes under which Plaintiff

seeks relief.  In other words, she did not complain that Crisp made discriminatory or abusive

comments or statements because of employees' disability or age.  What Zimmerman appears to be

complaining about is the age-old and inherent to-and-fro in the workplace that occurs between

employees and supervisors.  Without more, the record is devoid of any evidence that Zimmerman was making any complaint of a hostile work environment based on age or disability.

Plaintiff further argues, without citing to any evidence in the record, that she "complained of FMLA abuse."  Plaintiff does not present any evidence regarding FMLA abuse after 2001.  Accordingly, she fails to satisfy the first element of the three-part test for retaliation and cannot make a *prima facie* case under either statute.  Further, as she cannot show that she engaged in protected activity, she necessarily fails to establish the requisite causal connection between the adverse employment action and alleged protected activity.  Therefore, the court determines that, because there is no evidence that Plaintiff engaged in protected activity, she has failed to state a *prima facie* case for retaliation under the ADEA or the ADA.

In any event, even assuming Plaintiff could establish that her comment about Crisp's "bullshit pressure" constituted protected activity, thus establishing the first element of a *prima facie case* for retaliation, she has not shown that her termination would not have occurred "but-for" her purported protected conduct.  Zimmerman attempts to demonstrate pretext by showing that: (1) she was terminated despite never receiving a poor performance review during her 15-year employment with Gruma; (2) Gruma did not issue a verbal warning or a written warning as outlined in its progressive discipline policy; and (3) she was terminated within days of complaining to Santana that Crisp was creating a hostile work environment.  The court determines, however, that Plaintiff cannot show that her termination "within days of complaining to Santana" was not due to her use of inappropriate language, and, thus, violation of a workplace rule.

Plaintiff does not dispute that she was approached by Lucken in 2007 regarding the e-mail she disseminated in 2007 or that she was issued a Final Warning in 2009.  Plaintiff appears to complain that because she did not receive an employee disciplinary action notice regarding the 2007 incident, Lucken's instruction to Plaintiff to not use company e-mail to send personal messages does not constitute a "verbal warning."  The court finds Plaintiff's argument unavailing.  Furthermore, the court is unconvinced that Zimmerman's termination despite good performance reviews   creates a fact issue as to pretext.  The court therefore determines that there is no genuine dispute of material fact as to Plaintiff's retaliation claims under the ADEA and the ADA, and Defendant is entitled to summary judgment on these claims.

## V.      Conclusion

For the reasons stated herein, the court **sustains in part** and **overrules in part** Defendant's Objections to and Motion to Strike Plaintiff's Summary Judgment Evidence.  With respect to the statements mentioned in paragraphs 14, 18, 19, 20, and 26 of Plaintiff's affidavit, and the personnel records in pages 12-75 of Plaintiff's Appendix, the court **strikes** these statements and documents from the record.  With respect to Plaintiff's statement in paragraph 27, the court **denies** Defendant's request to strike them from the record.

The court further **determines** that no genuine dispute of material fact exists regarding Plaintiff's claims for age discrimination under the ADEA; disability discrimination under the ADA; or retaliation under the ADEA or the ADA.  Accordingly, Gruma is entitled to judgment as a matter of law on these claims; the court **grants** Defendant's Motion for Summary Judgment and **dismisses with prejudice** this action.  Judgment will issue by separate document as required by Federal Rule of Civil Procedure 58.

**Memorandum Opinion and Order - Page 30**

**It is so ordered** this 21st day of June, 2013.

Sam A. Lindsay
United States District Judge